FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHELLEY A.,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | NO. 4:25-CV-5140-TOR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF No. 11) and the Commissioner's Motion for Summary Judgment (ECF No. 14). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's motion (ECF No. 11) is **GRANTED** and the Commissioner's motion (ECF No. 14) is **DENIED**.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*.  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3

proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

**ALJ'S FINDINGS**

Plaintiff applied for a period of disability and disability insurance benefits on June 22, 2022, alleging disability beginning May 1, 2019. Tr. 18. The claim was denied initially on January 18, 2023, and upon reconsideration on August 10, 2023. *Id.* Plaintiff requested a hearing and a telephonic hearing was held before an administrative law judge ("ALJ") on September 19, 2024. *Id.* On October 11, 2024, the ALJ denied Plaintiff's claim. Tr. 28. The Appeals Council denied review on August 20, 2025, making the ALJ's decision the final decision subject to judicial review. Tr. 1; 20 C.F.R. § 404.981.

As a threshold matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. Tr. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2019, the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff had the following severe impairments: pancreatitis, gastroparesis, obesity, and adjustment disorder. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21. The ALJ then determined Plaintiff has the residual functional capacity ("RFC") to perform light work except as follows:

> [N]ever climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; work located in a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

> building with ready access to a restroom; understand, remember, and carry out simple, routine tasks; maintain concentration, persistence, and pace for two-hour intervals between regularly scheduled breaks; and to insure a "low pressure" work setting, work only in a predictable work environment, no assembly line pace or similarly fast paced work, and no interaction with the public.

Tr. 22.

At step four, the ALJ found Plaintiff could not perform past relevant work. Tr. 27. At step five, the ALJ determined that Plaintiff's ability to perform a full range of light work is "impeded by additional limitations" and sought testimony from a vocational expert as to the "extent to which these limitations erode the unskilled light occupational base[.]" Tr. 28. The vocational expert testified that an individual with Plaintiff's RFC, age, education, and background would be able to perform the requirements of the following representative light work occupations that exist in significant numbers in the national economy: cleaner or housekeeper, with 190,000 jobs nationally; price marker, with 160,000 jobs nationally; and small products I assembler, 20,300 jobs nationally. Tr. 28. The vocational expert testified that he based his testimony related to access to the restroom, climbing, and interactions with the public on his own training, knowledge, and experience. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability from May 1, 2019, through October 11, 2024. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

<b>ISSUES</b>

Plaintiff seeks judicial review of the ALJ's final decision denying her disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues:

1.  Whether the ALJ properly weighed the medical opinion evidence;

2.  Whether the ALJ conducted an adequate step three analysis;

3.  Whether the ALJ properly weighed the lay witness testimony;

4.  Whether the ALJ properly considered Plaintiff's subjective symptom testimony; and

5.  Whether the ALJ properly met her burden at step five.

ECF No. 11 at 6.

<b>DISCUSSION</b>

**A. Medical Opinion Evidence**

Plaintiff argues the ALJ erred by failing to properly weigh the medical opinion evidence of Plaintiff's treating medical providers, Jasmine Zia, MD, and Marja A. Adair, ARNP.  ECF No. 11 at 8.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  20 C.F.R. §§ 404.1520c, 416.920c; *see also Revisions to Rules Regarding the*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

*Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). These factors are defined as follows:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s),

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.*   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

Dr. Zia submitted a medical report dated May 9, 2024 reporting that treatment of Plaintiff began on February 16, 2023 and was ongoing.  Tr. 2322.  Dr. Zia noted that a gastric emptying study conducted on Plaintiff April 30, 2022 showed delayed gastric emptying and an EGD on April 20 2022 showed mild gastritis.  *Id.*  Dr. Zia opined that Plaintiff would miss four days a month or more due to her symptoms, was limited to sedentary work, and would be off task during a forty-hour workweek over 30% of the time.  Tr. 2323-2324.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

Nurse practitioner ("NP") Adair reported that she first started treating Plaintiff on January 3, 2024. Tr. 2425. NP Adair reported that Plaintiff had a positive test for delayed gastric emptying. *Id.* She noted that Plaintiff has to lie down in the fetal position several hours per day; suffered side effects from medication including sleepiness, decreased cognitive function, GT issues, and abdominal pain; would miss four or more days of work per forty-hour work week and would be off task over 30% of the time from her medical impairments; and was unable to perform even sedentary work. Tr. 2425-2426.

The ALJ found both of these opinions unpersuasive as unsupported and inconsistent with the record. Tr. 25-26. The ALJ noted the opinions were not consistent with the record because a CT scan from March 2022 showed a normal pancreas, Plaintiff had a normal gastric emptying study in March 2024, and other examinations produced many normal abdominal findings. Tr. 26 (citing Tr. 1780, 2147, 2340, 2333, 2346, 2353).

The ALJ found the opinions also unsupported by the evidence documented. The ALJ noted that Dr. Zia reported an EGD in April produced "mild" findings and that Dr. Zia's opinions that Plaintiff would be excessively off-task and absent from work were internally inconsistent from her opinion that Plaintiff could do sedentary work and working would not deteriorate Plaintiff's condition. Tr. 26. The ALJ further explained that NP Adair's opinions did not provide any specific

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

dates for the listed tests, or any clinical findings that corresponded to the dates of treatment and that the medical evidence did not support a need to lie down or be excessively off-task and absent from work.  *Id.* The ALJ also found the opinions to be speculative as Plaintiff had not been working at that time and noted that the opinions as to being off task were without any explanation and in checkbox form. *Id.*

Plaintiff argues the ALJ failed to adequately evaluate the consistency and supportability of Dr. Zia and NP Adair's opinions because the ALJ did not identify any alleged "internal inconsistencies" and failed to explain why other opinions were granted greater weight.  ECF No. 11 at 11.  However, the ALJ specifically identified Dr. Zia's opinion that Plaintiff would be excessively off-task and absent as internally inconsistent with her opinion that Plaintiff could perform sedentary work day to day on a sustained, competitive basis.  Tr. 26.  The ALJ additionally explained why other opinions were found more persuasive in terms of supportability and consistency as required under the new regulations.  Tr. 25, 26.

Plaintiff further argues that the ALJ erroneously discounted the opinions as check-box forms and overlooks all the supporting evidence and consistent findings throughout the record.  ECF No. 11 at 11-12.

First, while an ALJ may not discount a medical opinion solely on the basis it is presented in checkbox form, the ALJ may take into consideration the quality of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

the explanation given.  *Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).  Here, neither Dr. Zia nor NP Adair provided much explanation accompanying their opinions which are mostly presented in checkbox form.  And second, the Court's review is limited to the reasoning provided by the ALJ and may not reweigh the evidence.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ.").

The Court concludes the ALJ adequately addressed the supportability and consistency factors in finding Dr. Zia and NP Adair's medical opinions unpersuasive.

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff argues the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.  ECF No. 11 at 17-20.  An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony can be reasonably accepted as consistent with the objective medical and other evidence in the claimant's record.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

(9th Cir. 2009)).  "The claimant is not required to show that her impairment 'could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  When evaluating the intensity,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

persistence, and limiting effects of a claimant's symptoms, the following factors should be considered: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7–8; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23.

Plaintiff argues that the ALJ simply recounted the medical evidence and did not identify any specific inconsistencies with Plaintiff's testimony. ECF No. 11 at 18. The Court agrees.

The ALJ noted that Plaintiff testified as not being able to work due to gastroparesis which results in abdominal pain, vomiting, and diarrhea. Tr. 23.

> According to her testimony, if she is out of the house, the nausea keeps her from doing things that make her exhausted and generally feeling

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

unwell.  The claimant also testified that she spends most days in the bathroom or in bed, staying close to the bathroom; the symptoms also wake her up during the night and disturbs her sleep.  The claimant further testified that she has trouble remembering things, and she cannot concentrate to read and cannot keep track of the story.  Per her testimony, she is limited to lifting about 15 pounds and standing about 20 minutes; walking up and down stairs is painful.

First, the ALJ discounted Plaintiff's testimony on the basis that the daily activities Plaintiff reported in 2022 and 2023 suggested Plaintiff's condition was not as limiting as alleged.  Tr. 23.  The ALJ noted that Plaintiff "reported having the ability to take care of personal needs, take care of pets, assist with taking care of a granddaughter, prepare simple meals, go outside daily, drive a vehicle, use a computer, spend time with others, visit the gym, attend church, and pick up groceries."  *Id.*  However, Plaintiff also noted that she did not sleep full nights due to nausea, shops for food and household items from the computer and only does grocery pickup, needs assistance when cooking even simple meals, only goes to the gym when she feels well, and has to have her spouse do the majority of the household chores.  Tr. 264-265.  The ALJ did not explain how these daily activities undermine Plaintiff's testimony that she needs to stay near a bathroom most of the day, has disturbed sleep from her symptoms, suffers from nausea most days, and gets exhausted being outside of the house.  Moreover, Plaintiff testified that her need to be near a bathroom due to vomiting or diarrhea occurred during flares of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

her gastroparesis which occurred every few months but had become more frequent over the years.  Tr. 46-47.

The ALJ also discounted Plaintiff's testimony on the basis that that Plaintiff had reported that medications were effective in controlling the abdominal/digestive symptoms.  Tr. 23.  However, the only record the ALJ relied on does not support this finding as it was from a follow up appointment for a medication related to Plaintiff's diabetes, not symptoms related to her gastroparesis.  Tr. 2408, 2411. Plaintiff even reported during the follow up that the medication made her gastroparesis worse resulting in the provider discontinuing it.  Tr. 2411.

The ALJ also concluded that the evidence did not substantiate disabling abdominal/digestive impairments and summarized the record but again does not identify was portion of Plaintiff's testimony is undermined by the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (citation and internal quotation marks omitted)).  The ALJ noted that Plaintiff treated her problems with medications, however, those treatment notes did not necessarily undermine Plaintiff's testimony.  For example, Plaintiff reported in May 2023 that her nausea had a 70% improvement with a gastroparesis diet and domperidone but still felt debilitated two out of seven days and struggled in the mornings with

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

nausea.  Tr. 2149.  This supports Plaintiff's testimony that during gastroparesis flares she cannot leave the house on average two days a week because she needs to be near a bathroom.  Tr. 49.  Moreover, in the second record the ALJ referenced, Plaintiff explicitly stated she was not currently taking Reglan, a medication for nausea and vomiting.  Tr. 2375.

The Court does not find the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony related to her physical impairments.  Such legal error was not harmless.  Plaintiff testified that on average she spends upwards of three hours in the bathroom two days a week due to her symptoms.  The vocational expert testified that a need to leave one's work station for 30 to 60 minutes on an unscheduled basis more than one day a month would preclude competitive employment.  Tr. 64-65.  Therefore, the ALJ's decision must be reversed and remanded.

**C. Step-Three Analysis**

Plaintiff contends the ALJ's step three finding that Plaintiff did not meet or equal Listing 5.06C was improper and insufficient warranting remand.  ECF No. 11 at 14-15.  Listing 5.06 for inflammatory bowel disease may be met where a claimant demonstrates:

> C. Repeated complications of IBD (see 5.00D5a), occurring an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more, within a consecutive 12–month period, and marked limitation (see 5.00D5c) in one of the following:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

    1. Activities of daily living (see 5.00D5d); or

    2. Maintaining social functioning (see 5.00D5e); or

    3. Completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (see 5.00D5f).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ concluded Plaintiff did not meet Listing 5.06C because "the medical evidence does not include any . . . repeated complications resulting in marked limitation in activities of daily living, maintaining social functioning, or completing tasks in a timely manner." Tr. 21. A marked limitation is a degree of limitation that "interferes seriously with [the] ability to function independently, appropriately, and effectively." *Id.*

Plaintiff argues that the medical record, opinion evidence and Plaintiff's testimony establish that Plaintiff suffered from repeated flares of gastroparesis every three to four months that resulted in marked limitations in activities of daily living. ECF No. 11 at 15. The applicable regulations define activities of daily living to include, but are not limited to:

> such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills. We will find that you have "marked" limitation in activities of daily living if you have a serious limitation in your ability to maintain a household or take public transportation because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by your IBD (including complications of the disorder) or its treatment, even if you are able to perform some self-care activities.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

In determining whether an impairment medically equals a listing, an ALJ must "consider all evidence in [the] record" about the impairment and its effect on the claimant. 20 C.F.R. § 404.1526. Plaintiff testified that she experienced flares of gastroparesis every three to four months with a duration of about two weeks. Tr. 46. During these flares, Plaintiff testified that she suffers from nausea, vomiting, and diarrhea and, as a result, is severely fatigued and restricted on the daily activities she can do because of her symptoms. Tr. 46-47, 50-51. If Plaintiff's testimony were credited as true, it is not unreasonable that she could equal Listing 5.06C. Therefore, the ALJ's error in discounting Plaintiff's symptom testimony necessarily effects the step three findings. Thus, on remand the ALJ will reevaluate the evidence of the record after properly considering Plaintiff's testimony and make new step three findings if appropriate.

**D. Lay Witness Testimony**

Plaintiff contends the ALJ failed to properly address the lay witness testimony submitted by Plaintiff's spouse, Matt Armstrong, and Plaintiff's father, Donald Pearson. ECF No. 11 at 15-17.

Mr. Armstrong's submitted statement on August 29, 2024 reported that Plaintiff has suffered from stomach issues for years, however, symptoms became so bad by April 2019 that Plaintiff could no longer work. Tr. 329. Mr. Armstrong reported that Plaintiff often needs a restroom on very short notice and suffers from

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20

constant nausea and fatigue requiring naps almost daily.  He noted that Plaintiff can typically only stand for a few minutes before needing rest and simple activities such as playing with her granddaughter or going out in public with the family is very taxing.  Tr. 329.  Mr. Armstrong also reported that he often sleeps in a separate bedroom because his movement on the bed would make Plaintiff nauseous.  *Id.* Mr. Armstrong further noted that to date none of the medical procedures seem to give Plaintiff relief and doctors have exhausted most of the medications available.  *Id.*

Plaintiff's father, Donald Pearson, also submitted a statement on August 29, 2024 and reported that he and Plaintiff's mother, who suffered from dementia, moved in with Plaintiff and her husband in the summer of 2021 so Plaintiff could assist with caring for her mother.  Tr. 330.  Mr. Pearson reported that Plaintiff's worsening stomach issues made it increasingly difficult for Plaintiff to assist with her mother's care, such as taking her to medical appointments, going shopping, and grooming her.  *Id.*  Mr. Pearson explained that he and Plaintiff's mother eventually had to move into an assisted living facility after Mr. Pearson suffered a minor heart attack in February 2022 which affected his ability to help care for Plaintiff's mother and Plaintiff was not well enough to do so.  *Id.*

In considering the lay witness testimony, the ALJ concluded that "[a]lthough they observed the claimant in a non-clinical setting, they are not a medical source,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

and the limitations are inconsistent with the medical evidence." Tr. 27 (citing Tr. 1867, 2400, 2411). The ALJ referenced three records in support. First, a record from November 9, 2022, where Plaintiff reported that she had no difficulty walking or climbing stairs, dressing or bathing, or doing errands alone. Tr. 1867. Second, a record from May 21, 2024 where NP Adair reported Plaintiff's gastroparesis syndrome was stable with no concerns at that time. Tr. 2400. And third, the record where Plaintiff reported that the medication she was using to treat her diabetes was effective but which the ALJ mistook as treatment for her gastroparesis. Tr. 2411.

As the ALJ relied in part on an erroneous interpretation of the record in discounting the statements of Mr. Armstrong and Mr. Pearson's statements, the ALJ will reconsider the lay witness testimony on remand.

**E. Step-Five Determination**

Plaintiff contends the ALJ erred by failing to meet her burden at step five. The ALJ's determination at step five was based on the vocational expert's testimony that jobs that exist in significant numbers were available in the national economy to an individual with Plaintiff's age, education, work experience, and RFC. However, the Court notes that as the ALJ erred in discounting Plaintiff's symptom testimony, reconsideration of the testimony could alter the ALJ's assessment of Plaintiff's RFC and/or alter the limitations included in the ALJ's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22

hypothetical posed to the vocational expert.  Therefore, the ALJ will reevaluate the step five determination on remand.

**F.  Remand for Benefits**

Plaintiff argues that proper consideration of Plaintiff's testimony, as well as Medical-Vocation Rule 201.12 as of her 50th birthday, warrants remand for payment of benefits.  ECF No. 11 at 20.  Plaintiff's contention necessarily requires that the Court credit her testimony as true, however, "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).  The Court does not find that it is clear from the record that Plaintiff is disabled.  Therefore, the Court remands for further proceedings, not an award of benefits.

//

//

//

//

//

//

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 11) is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

3. Pursuant to sentence four of 42 U.S.C. § 405(g), this action is hereby **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order.

The District Court Executive is hereby directed to file this Order, enter judgment for Plaintiff, provide copies to counsel, and **CLOSE** the file.

DATED April 2, 2026.



THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24